I'm going to go ahead and open up the Lynn case. Judge Greenberg, you're still on? Yes, I'm sorry. I'm so sorry. It's great. Thank you, Judge. Could I have my seat, please? Thank you. All right, everyone's in place. Good afternoon. Good afternoon. Counsel, let's begin the Lynn argument. May it please the Court, Ajani Brown for the appellant and my co-counsel, Brandon Christensen, for the rebuttal. This is a pretext case. As such, the intent of the decision-maker is paramount. The designated decision-maker in this case was Senior IP Counsel James Voros. How do we get – we might as well just cut right to the chase. Your brief is basically a challenge to the credibility determination. Yes. Giving Mr. Voros benefit of the doubt on some subjects, assuming he was not truthful on other subjects. How does this Court have the authority to go behind those credibility determinations, given the rules and the case law that says we should be so deferential on those sorts of things? I think, Your Honor, that question is answered because there's just clear error in this instance, and you have so many routine findings where Voros is deemed by objective evidence to have lied. And then to credit him on the very white center of the case, the 2007 settlement discussion, to credit his testimony in light of the prior inconsistencies that he had had before. The judge assumed he was not truthful on his account, but nonetheless concluded that there was no – that did not prove that the reason for the conduct of the company was because of the EEOC claim. But then he also discounted the effect of assumed false testimony, which in an ordinary pretext case would have been sufficient to establish retaliation. He also just glazed over many objective evidence – lots of objective evidence that we have produced that showed that he was inconsistent. The trial judge said that he found no inconsistencies and implausibilities, but in fact the record is complete with them. Well, he did find an inconsistency. He found an inconsistency between the privilege log statement in 2005 saying – the EEOC claim and the 2007 – his testimony that he only knew about in 2007 when he ran into counsel for the company on the street. The judge acknowledged those inconsistencies and then explained why it didn't influence his decision. So how can we go behind that where we have an explanation? But I don't think that the – reading the record, I don't think the trial judge did acknowledge all the inconsistencies because with regards to the – he didn't acknowledge really the Karen Porter email from 2001 where they'll say that he had no involvement in the Lynn EEOC charges. But the question is in what role? I'm sure that you can continue to recite many pieces of evidence that you don't think that the district court took sufficient notice of or maybe they didn't write as much as you'd like, but the question that Judge Schwartz is getting at is how do we get to those questions? You know, our purpose on review is not to look at all of this and say, oh, well, you know, I guess it could have gone this way, it could have gone that way, right? I mean, what is the focus and error that you see that we can grasp onto and say this deserves to go back? I don't think you can grasp onto one particular event because as the Supreme Court stated in Anderson, I mean, the appellate credibility review has to be done in light of the entire record, and you just have to look over the span of litigation for these past 15 years, and I think that the lower court didn't do a good job at doing that with regards to the 2003 to 2008 activity. So for the district court focused heavily on the nondisclosure by Lynn but also, you know, presumed that Voros and Roman Haas were in pursuit of trade secrets when really the timeline doesn't match up. In 2003, that's when Voros found and was notified that Lynn had the abstract with the DOE, but at this point he did not seek to have a preliminary trade secret review done by Drs. Hahn and Drs. Calvacanti, who could have been able to confirm or state whether or not they believed there were trade secrets. At this point, he did not seek to enforce the 2001 preliminary injunction that they had obtained against Lynn and hold her in contempt of court. At this point, he did not notify the DOE about the injunction that they had obtained in court. But no, he proceeded with more costly litigation and then continued to issue sanctions against Lynn for nondiscovery, even though he had avenues to correct the fact that, you know, there may have been trade secrets out there. Counselor, I couldn't help but wonder what you want us to do here. Do you want us to say that certain facts would tend to support an opposite conclusion and that the court didn't take them into account and remand the matter to the court to take these conclusions and then see where it ends up at that point? Or do you think as a matter of law, we should just hold contrary to what the district court held? I mean, do you want us to make the final determination or to remand it, rejecting certain and emphasizing certain aspects of the case and telling the court to take these into account? What is it that you want? No, our position is that to ask you to reach a merit determination would be beyond the scope. We do not want you to reach a merit determination. We just simply want this case remanded back to the district court so that all of the evidence can be considered in light of the clear error of not sufficiently considering all of the evidence beforehand through the first trial. Well, you're not asking for a new trial. I mean, your brief does, but I don't know how you could when the district court has already concluded you didn't present an argument requesting a new trial and the district court found you waived it. You can't be asking for a new trial now, correct? I mean, you waived that. I believe that we were asking for it to be remanded and reconsidered, and what that reconsideration would look like would be, you know, the parties could agree and stipulate that certain parts of the testimony and trial record already be set and that you could have the witnesses, Lynn and Voros, testify. But we do want a new trial. How do you get around the fact, if that's what your request for relief is, the district court, in its opinion, said the plaintiff didn't present an argument in support of a motion for a new trial and deemed it waived? If that's the case, how could you ask us for a new trial? Because that's essentially what you're asking. I don't know about this procedural mechanism, because if this had been a jury trial, you couldn't have what you've requested. It only would work because it's a bench trial. So you're essentially asking for a new trial.  Your Honor, I honestly cannot answer that per se, and I'd have to get a note from my opposing counsel. Your colleague can address that issue on rebuttal, which is fine. Okay. Which is fine. But I think back to our point is, how do we look behind this? You want us to basically have a sense from the review of the record that this district court judge ignored inconsistencies. Yes. And the fact that he's affirmatively stated that there were no inconsistencies, I think that is the main point. He stated that he found no inconsistencies or impossibilities. When there is objective evidence that does. Where does he say there were no inconsistencies? He recognizes that there was an inconsistency between the 2000. I'll give you one example. The 2005, sort of the only evidence that shows that Varose was acknowledged on notice of the Wynn EEOC complaint at the time, but then testified it was 2007. And the district court's explanation of that was, I can understand why he'd have a more memorable, a fresher memory of encounter with counsel than an email he wrote 10 years before the litigation. So the district court didn't ignore inconsistencies. It just explained why they weren't of consequence. But even in that instance, like the fact that he may have recalled it, he has been so heavily involved and entrenched in the EEOC charges since the beginning that saying that, oh, he forgot that he did not know of it, that in itself is implausible. But you're saying that he was so entrenched, you're relying on the EEOC charges from when? From 2001, the ones in Wynn 1, where the district court found race judicata and all of that? There was already a ruling in favor of the company on that? So our position is that the pre-2005 evidence was just looked at as background information. He didn't look at that for evidence of an intent. And as you know, prior and subsequent acts can be sufficient evidence to establish intent. So we can see the fact that the pre-2005 evidence cannot be used to bring forth claims, but it can be used to bring forth and show a course of conduct which proves that this instance is not a single retaliatory instance because that would be more difficult to prove, but showing that this has been a consistent pattern of retaliation over a time period. Do I have anything further here? I just have one other question. So your argument is that we should overturn this verdict because of these inconsistencies that you suggest were forgiven by the district court or not deemed as being inconsistent. That's your position, right? Yes. And that's the only evidence that you would have to demonstrate that this must have been pretextual. No, Your Honor. That is not the only evidence. Is there in the record that would show that the initiation of the Montgomery County litigation and all of the discovery and the contact with the DOA was motivated by the filing of the EEOC complaint as compared to the company's desire to protect its trade secret information? Tell me what else we can look at besides these inconsistencies for us to say that's what the motivation was. I think that you can look at the timeline. So they found out about the charge in 2003 but did nothing to do. They found out about what charge? About Lynn's abstract, I mean. They found out about the DOE abstract in 2003. Yes. Not in a later time when it was disclosed in the Philadelphia Inquiry. No, I'm sorry, not disclosed. It was found out by some employee who came upon it or a lawyer who came upon it. No, they discovered the abstract in 2003. Do you have an app site for that? Yes. The site for that would be, let me just find it. I actually don't have that one with me either. I apologize, Your Honor. My co-counsel will be able to get that to you. And he didn't conduct a trade secret review until two and a half years after that. So if it was really about trade secrets, you know, you would think that you would have your resident experts in trade secrets do that review. You also have the fact that there's the 2007. How would we look behind the timing of the examination of the trade secrets? So the question's two-pronged. How and why? How would we do that? Why would we do that? I mean, I think that proves that the primary motivation was not the concern for disclosure of trade secrets. If he was really concerned about trade secrets, he would have had Drs. Hahn and Cavalcanti review the information when he first got the abstract and then proceeded to any course of litigation or just to have a good faith belief that there actually were trade secrets. And then you have the 2007 discussion, which is like the white-hot center of the case where you have Attorneys Chesney and Hutchison state that, you know, Voros stated that he was going to crush them, her financially, with the DOE if he did not agree to settle. And that is the most direct piece of retaliation. It comes in between his communication with the DOE that he denied. I see that my time has expired, unless Your Honors have any further questions. Thank you. Thank you. May it please the Court. I am Raymond Kresge, the attorney for the Apolli Roman House Company, the prevailing defendant before the district court in this Title VII retaliation case brought by the appellant. Let me first respond to the allegation in the argument from Lynn's appellate counsel about inconsistencies. I think what we need to focus on, first of all, is that James Voros testified on four days of the 11-day trial. And on three of those days, he was cross-examined by Dr. Lynn's able counsel. And Mr. Voros was consistent throughout his testimony as to the reasons for his actions, that he was consistent, which is, of course, the material issue in the Title VII retaliation case. Why did Mr. Voros do the actions that he did? Why did he direct that the state court discovery be done? Why did he direct that there would be follow-up with regard to that? And why did he interact with the Department of Energy? And he was consistent throughout his testimony. There is no inconsistency here as to why he acted. He acted to protect. He's an intellectual property lawyer for the company. He acted to protect Roman House's intellectual property. Was your adversary correct that the company knew about the DOE abstract in 2003? Correct. And that's what triggered the actions in this case. And contrary to counsel's argument, Mr. Voros did consult with the Roman House scientists, Dr. Hahn and Dr. Cavacanti. The record supports that. Judge Yahn made findings about that in his memorandum of opinion. But there was a limited amount of information that could be addressed. There was no ability to do a trade secret review because all we had was the abstract. So the response to the abstract was to consult with a scientist, make an assessment as to whether there was reasonable concern in terms of potential overlap with research to which Dr. Lynn had been exposed to at Roman House, and then to seek discovery, which is all that Mr. Voros did. Then later, when there was more documents provided, not through Dr. Lynn, but through her research partner, Temple, then there was further trade secret review analysis done in this case. Do you think we should draw anything from the fact that after the 2007 deposition commentary about whether there was a settlement or how if you don't settle, what consequences will be? And there were several, there were months before the DOE was contacted again. Is that right? Absolutely. And should we draw anything from that? No, there's nothing. Well, there's nothing to be drawn about it that Dr. Lynn has asked to be drawn about it. What we have to take a look at is a couple of things. First of all, this is not the white-hot center of the case. This occurs on March 2, 2007, and most of the events about which Dr. Lynn complains about in this case occurred before the settlement proposal, number one. Number two, I think it's important that the district court never discredited Mr. Rose in terms of his testimony that he didn't make the threat. Number three, and he also did not credit Lynn's witnesses who were the lawyers. But the most important thing, and this is something that Judge Yon addressed with counsel for Dr. Lynn on the very opening day of trial, is that the material issue when it comes to the settlement proposal is even assuming, which is what Judge Yon did, even assuming that some threat to contact the DOE or to threaten the relationships with the DOE was made, was it because of the EEOC charges? That's what the retaliation case is all about. And that's what Judge Yon addressed with counsel at the very opening day of trial by saying, I am troubled because I don't see how this flows from the EEOC charges. And there is no trial record evidence that makes that call so late. I think that also, to Your Honor's point, there were months after the settlement conference reference, a lynch reference to threatening the DOE relationships, before Mr. Burroughs contacted the Department of Injury, ten months to be precise. And that was triggered. So the record is clear about why Mr. Burroughs contacted. In fact, Dr. Lynn didn't even challenge the first contact with the DOE. The first contact with the DOE was made at the end of 2007, after Mr. Burroughs saw a newspaper article in the Philadelphia Inquirer in which he learned for the first time that Dr. Lynn had disclosed 45 pages of Roman Haas confidential information in direct defiance of the state court order directing her not to do that. That's why he contacted the Department of Energy. So if we have this red-white hot center and the threats and all the actions we're taking afterwards, that just didn't follow through in terms of the facts. And the trigger for the initial contact with the Department of Energy was the newspaper article and Dr. Lynn's improper conduct. The second trigger for the contact, which occurred in May of 2008, was simply the default judgment order,  that a default judgment order had been entered and that it applied to the MAE grant research work. And I think it's particularly significant that this whole issue of the settlement conference or the settlement proposal discussions really lacks any kind of relevance in this case, is that as soon as Mr. Burroughs learned from the Department of Energy that the MAE grant work had ended two years before, he ceased all communications with the Department of Energy. And even Dr. Lynn admitted in her trial testimony, and there was a finding of fact at this point, that Roman Haas did nothing, did nothing, to harm her or her company ever news relationship with the Department of Energy. And I gather your response to your adversary's point that if they knew about the DOE abstract in 2003 but didn't act until after 2007, because they're asking us to draw an inference that he had information for four years and he only responded to it after the settlement discussion broke down. I gather your position is in 2003 they just didn't have enough information to go to the DOE because they only had the abstract and then decided let's pursue discovery to try to see whether or not the information from the abstract was actually Roman Haas information. And as it appears through this record, that discovery hit many roadblocks requiring numerous assistance and motions to compel and including getting information from Temple. And it was only then, if I understand the chronology, that Roman Haas was in a position to even think that the DOE stuff was connected to Roman Haas. Do I understand the chronology right? And if I'm wrong, please correct me. I think it is generally correct, Your Honor, but I would just refine it by directing your attention to findings of fact 57 and 58, which appear in the joint appendix at 45 and 46. And that is that Mr. Burroughs did have some reasonable concern with the abstract, but the abstract is just a paragraph. It had a title, it had some elemental composition components to it, and it had a general description, you know, a couple of lines, three, four, five sentences. And Mr. Burroughs was sufficiently concerned by that to consult with Dr. Hahn, that's in finding of fact 57, joint appendix 45, and also to consult with Dr. Calvacanti, Dr. Calvacanti being the Roman Haas scientist who actually did the research that had the overlap, the potential overlap. And based upon the input of those two Roman Haas scientists, to whom the district court credited, then Mr. Burroughs decided to pursue the discovery. So there was concern in the beginning, and that's what triggered the beginning of the events of this case, which is the request for the discovery. But then the actual follow-up, more detailed review could not take place until we saw some documents. And even to this day, Dr. Lynn never really produced anything. But there were some documents produced through Temple that allowed a little bit more of a review and also a little bit more of a concern. And then there was the Dr. Strongen testimony in which she, upon being confronted with the Roman Haas research, looked at that and said, this is very similar chemistry to what we're doing, the Roman Haas chemistry. What was the full extent of the district court's ruling that the now appellants had waived particular arguments? Judge Schwartz earlier asked your adversary about waiver and how their argument had to be constricted by the district court's ruling on waiver. And my question to you is, what was the full extent of the district court's waiver? What was the scope of the district court's ruling on waiver? Well, as I recall and understand it was, as Judge Schwartz said, which was a waiver of a right to request a new trial in this case, so that the appellant is limited in this particular appeal to just requesting some remand and reconsideration. And there really is no basis for that, I think, as reflected by the questions being asked in this case, because a fundamental tenet of our judicial system What would that look like? I'm trying to figure out. I don't know. What would that look like? So you remand and you're not going to have a new trial, so that means you're not vacating the court's order. It would be reconsidered by a different judge since our judge has retired. What would be reconsidered? I don't believe there is any basis for this appeal. So I don't know exactly, given the waiver of the right to the new trial, I don't believe there is any basis for this court to order anything in this case. But I think the most fundamental point is that That would mean that we'd be good then, right, if there's no basis? We'd be good, right? Yes. Yes. Great. Yes. Yes, I agree, Your Honor, but I think that this appeal can be dismissed on multiple grounds, one of which is that there is nothing that has been preserved for appeal and there is nothing for this court to order. Yes, you could remand the case for a new judge and give certain thoughts as to the significance of the evidence and let the judge make the findings on the record. There'd probably be a lot of volunteers to take the case. No, but as we've said in our briefs, Your Honor, that's not really the role of the Court of Appeals under our Federal Rules of Civil Procedure, under the Supreme Court case law and under the case law of this circuit, to order a reversal based on the credibility determinations that were made. It's hard for a judge, seriously, to make a determination of credibility, whereas there's a question of whether you believe somebody. If you can't see it, you get a feel for the case if the witnesses are there, and the record just can't substitute for that. That's the reality. And that's why we have Rule 52A, which requires deference to the district court for credibility determinations and fact findings in general, and that's why we have the Supreme Court case of Anderson and the Third Circuit cases on credibility determinations requiring deference. So we respectfully request that this appeal be denied and that be it. Thank you. Thank you. Okay, I have nothing further. May it please the Court, Brandon Christensen for the appellant. In response to Judge Schwartz's question about whether a new trial would be appropriate in this case, that issue hasn't been briefed on appeal, but we'd be happy to address that further after if you'd like. I actually have to address her question, which is why are we here and why isn't it waived as the district court alluded to? Well, I believe that Dr. Lynn's counsel did apply, did move for a new trial. And so just so the record's clear, I understand that there were motions to amend the district court's finding for a new trial or an alternative to amend the judgment. And the district court said, although plaintiff's motions for a new trial and brief describe the applicable standards under Federal Civil Procedure 59A, she does not explicitly argue for a new trial. We shall therefore consider her motion for a new trial as waived. That's what the district court said. And I was curious to see if that's the case and there's been no argument in the briefing to us that that was an error, how can we proceed? I think then, to the best of my knowledge, the way to proceed would be as Judge Greenberg has suggested, by remand and reconsideration by another judge without a full new trial. And do you have any authority for such a proceeding? When it's a bench trial, as I said to your colleague, if this had been a jury trial, we wouldn't be able to do that. We couldn't resummon the jury back in. We'd have to live with the jury's presumed credibility determinations. And if we thought that they were unsupported by the record, as you're arguing, it would be a new trial. Maybe it wouldn't be. It isn't a jury proceeding below, so that's important. And remanding for reconsideration on certain points, for example on Voros' testimony specifically, and leaving alone the rest of the record might be an appropriate way to proceed, but I don't have any case law on that subject. Thank you. Turning very briefly to the settlement conference, as the right hot center of the case, at trial Omenhaus promised twice to produce Mary Shaw as a corroborating witness for Voros' testimony. And since that time has refused to discuss Mary Shaw again, including at today's argument. Mary Shaw's absence from the record is important because the settlement conference is the closest that Dr. Lane comes to presenting direct evidence of retaliation. But the district court judge assumed the account as recalled by plaintiff's attorneys. So why Mary Shaw would add nothing to that? And so you already got the benefit of that inference or assumption. Go ahead. My first response would be that there's a difference between saying I believe him, but even if I didn't, and saying he lied, but I still believe him. And it's the first path that the court takes, and that was the wrong path to take. And second, the court doesn't follow that argument to its logical conclusion. The court accepts Voros' testimony on what happened at the settlement conference was false, but also accepts his explanations of why he did the things he did. And that's inconsistent to not accept his narrative of the events, but then to accept his reasons for those events. But there's false in all. False in one is not an exclusive rule because you can accept some, all, or none of somebody's testimony. So how can we look behind the district court's decision here? That's the biggest challenge that folks face, I think. Well, that's right, Your Honor, but that's why Mary Shaw's absence is so important. If it's just Lane's attorneys versus Voros, then I think Your Honor is right. But in the case where Rona Haas is promised to produce a corroborating witness and the witness doesn't, fails to do so, that rises to a different level than just a he said, she said type of situation. Where now we're looking at there's a witness that was promised and that wasn't brought, and then no explanation made in the record of why the district court failed to consider that. Thank you, Your Honor. Thank you. Judge Greenberg, do you have anything? No, I have no more questions. All right. Thanks so much, counsel, on an important argument, and we'll take the case under its licensing.